William R. Richardson (009278)
**RICHARDSON & RICHARDSON, P.C.**
1745 South Alma School Road
Corporate Center • Suite 100
Mesa, Arizona 85210-3010

Tel. (480) 464-0600
Fax. (480) 464-0602
Email. wrichlaw@aol.com
Attorneys for Debtor

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br>**DART PEBBLE CREEK, LLC,**<br>Debtor. | Chapter 11<br>2:13-bk-17326-GBN<br>**COMBINED DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION OF DART PEBBLE CREEK, LLC DATED October 3, 2013** |

## DISCLAIMER

The Court's approval of this Disclosure Statement only constitutes the Court's determination that this document contains "adequate information" under the terms of 11 U.S.C. §1125. Approval of this Disclosure Statement does not constitute an endorsement of the plan on the part of the Court nor does it constitute a certification or imprimatur in any way of (1) the likelihood of success of any plan proposed or (2) of the accuracy of any information provided in the Disclosure Statement. The Court has not performed any independent analysis or investigation of the contents of the Plan or Disclosure Statement and thus does not warrant the accuracy of either. Care should be taken by anyone considering the contents of the accompanying Plan or this Disclosure Statement to independently analyze the contentions and information asserted in the Plan and Disclosure Statement.

Dart Pebble Creek, LLC (the "Debtor" or "DPC"), the Debtor in the above-captioned proceeding, hereby submits the following Disclosure Statement and Plan of Reorganization to its creditors.

## DISCLOSURE STATEMENT

### A. General Information

Dart Pebble Creek, LLC, the Debtor in the above-captioned Chapter 11 case, submits this disclosure statement to its creditors and other parties in interest pursuant to Section 1125 of the Bankruptcy Code in connection with its plan of reorganization dated October 3, 2013 (the "Plan"). The Plan is included here below and is incorporated herein by reference.

Each creditor or party-in-interest should carefully review the Plan and disclosure statement in its entirety to determine the full and precise content of any specific term or provision. The contents of this disclosure statement should not be construed as legal, business or tax advice. Each creditor should consult his or her own attorney, investment advisor, business advisor and tax advisor concerning the legal, business, tax and related aspects and ramifications of the Plan. The information contained herein has not been subject to an audit by a certified public accountant and, for the foregoing reason, Debtor is unable to warrant or represent that the information contained herein is without any inaccuracy. The information and representations contained in this disclosure statement and Plan have been prepared from information provided by the Debtor. Accordingly, Counsel for the Debtor specifically disavows any responsibility for any inaccuracies contained herein. Neither the attorney for the Debtor nor the Debtor performed any independent analysis or investigation of such information and thus do not warrant its accuracy.

### B. Approval of Disclosure Statement and Voting.

Typically, disclosure statements are distributed to assist creditors and interest holders in making an informed decision in accepting or rejecting a plan of reorganization. Pursuant to 11 U.S.C. § 1126(f), a class of claims not impaired under a plan of reorganization is conclusively presumed to have accepted the plan and solicitation of acceptance with respect

to such class is not required. The holders of impaired claims are entitled to vote in their respective classes.

This disclosure statement is designed and intended to supply the holders of impaired claims or interest against the Debtor with "adequate information" from which they may make an informed judgment as to whether to vote for or against the Plan. This disclosure statement cannot be used for soliciting votes until, after notice and hearing, the Court determines that the disclosure statement contains "adequate information" within the meaning of 11 U.S.C. § 1125.

Once the Court determines that the disclosure statement contains adequate information, the Court will enter an "Order Approving the Disclosure Statement and Setting Confirmation Hearing and Deadline for Voting on Plan." Pursuant to this order, each creditor holding an allowed claim in an impaired class will receive a ballot for purposes of voting on the Plan as set forth in the Disclosure Statement. Each creditor holding an impaired claim, after considering the Plan and disclosure statement may complete the ballot and return it to the following address:

> Richardson & Richardson, P.C.
> 1745 S. Alma School Road
> Suite 100
> Mesa, AZ 85210-3010

**C. Representations Concerning the Plan.**

No representation concerning the Debtor is authorized other than those set forth in this disclosure statement. Any representation made to secure your acceptance other than those contained in this disclosure statement should not be relied upon by you in arriving at your decision, and such additional representations and inducements should be reported to Counsel for the Debtor who shall deliver such information to the Court and/or the U. S. Trustee to take such actions as may be deemed appropriate.

///

///

///

**D. Definitions.**

When used in this disclosure statement or Plan the following terms have the following meanings. To the extent that terms are not defined below, they shall have the same meaning as in the Bankruptcy Code or Bankruptcy Rules.

"Administrative Expense Claim" shall mean any claim entitled to priority in payment under Section 503(b) of the Code and any and all fees due to the United States Trustee.

"Allowed claim" or "allowed interest" means a claim against, or equity security interest (or beneficial interest), in the Debtor to the extent that: (a) a proof of such claim or interest was (i) timely filed; or (ii) deemed filed pursuant to § 1111(a) of the Code; and (b)(i) which is not objected to, or (ii) which is allowed (and only to the extent allowed) by a final order of the Bankruptcy Court.

"Bankruptcy Code" or "Code" means the Bankruptcy Code as set forth in Title 11 of the United States Code as amended.

"Bankruptcy Court" or "Court" means the United States Bankruptcy Court for the District of Arizona.

"Bankruptcy Rules" means the rules of bankruptcy procedure as adopted by the Supreme Court of the United States on April 25, 1983 and effective August 1, 1983, and as subsequently amended.

"Claim" means a right to payment from the Debtors whether the amount is fixed, contingent, unmatured, secured or unsecured. Such terms shall include all other rights to payment as encompassed in § 101(5) of the Bankruptcy Code.

"Class ___ creditor" means the holder of a claim in the designated class (i.e., class 1 creditor would mean the holder of a class 1 claim).

"Confirmation of the Plan" shall mean the entry of an order by the Bankruptcy Court confirming the Plan or reorganization in accordance with § 1129 of the Bankruptcy Code.

"Consummation of the Plan" means the accomplishment of all things required or provided for under the terms of the Plan.

"Court" means the United States Bankruptcy Court for the District of Arizona.

"Creditors" means all persons having claims, causes of action, suits, demands, actions or judgments of any nature whatsoever, against the Debtor, whether liquidated, unliquidated, contingent or disputed arising at any time prior to the confirmation of the Plan, and includes all persons who claim a lien, encumbrance, security interest or the like against property of the Debtor.

"Debtor" means Dart Pebble Creek, LLC, the petitioner in the above-captioned bankruptcy case.

"Disclosure Statement" means this disclosure statement filed in this case approved, after notice and a hearing by the Court, as being in conformity with §§ 1125 and 1145 of the Bankruptcy Code.

"Effective Date" means the latter of (1) the first business day following twenty days after entry of the order of the court confirming the Plan or (2) twenty days subsequent to the entry of a final order of a court of competent jurisdiction vacating or nullifying any order staying the efficacy of the order of confirmation, provided, however, that in any event, all appeals shall have been resolved prior to there being any effective date.

"Final Order" means an order of the Court, the time for appeal from which has expired and from which no appeal was timely filed; or from which any appeal has been finally determined or dismissed, and the effectiveness of which has not been stayed.

"Petition" means the original chapter 11 petition filed by the Debtor on October 3, 2003.

"Plan" shall mean the Plan of reorganization accompanying this disclosure statement as it may be amended, modified, and/or supplemented pursuant to which the Debtor proposes payment to claims of creditors and equity security holders.

"Plan Assets" are all assets of the bankruptcy estate in which equity in excess of any allowed exemption or secured claim is available for distribution to creditors.

"Plan Proponent" shall mean the Debtor whose name appears at the end of this document.

"Plan Term" shall mean the earliest of either the term specified for paying the class of general unsecured creditors or the date by which all allowed unsecured claims have received payments required by the Plan. Accordingly, if the Debtor is able to pay unsecured creditors their pro rata share of the distributions to unsecured creditors, the Debtor's Plan obligations will be deemed satisfied.

"Related Debtors" shall mean White Mountain Lodging, Inc., and Randolph Hank Tenney and Debra Lynn Tenney.

"Secured Creditor" means creditors holding claims against the estate which are secured by a lien on property of the estate limited, however, by the operation of § 506(a) of the Bankruptcy Code. Thus, if the amount of a creditor's allowed claim (plus the amount of all allowed senior secured claims) exceeds the value of the collateral, the creditor will be deemed to be an unsecured creditor to the extent of any insecurity, and a secured creditor to the extent of the value of the collateral.

"Unsecured Creditor" means all creditors of the estate with the exception of (1) priority or administrative creditors and (2) the allowed secured claims of secured creditors as defined herein.

### E. History of the Debtor

Dart Pebble Creek, LLC is an Arizona limited liability company. The Debtor owns and operates a strip mall located in Show Low, Arizona. The mall was purchased in July, 2007 for approximately $2,000,000.00. The mall remained substantially leased until approximately 2008 when the U.S. economy went into a free fall. Since that time, the mall has struggled to maintain tenants. In addition, the lease rates for the company have steadily fallen due to market pressures. The Debtor has made payments as it was able and ultimately, the senior lienholder, Desert Schools Federal Credit Union ("DSFCU" or the "Bank") exercised its assignment of rents and notified the tenants to pay payments directly

to the Bank. The assignment occurred beginning in approximately the month of August, 2013.

Along with the decrease in rental rates, the value of the mall has continually decreased as well. The Debtor estimates that the mall property is now worth only about $1,000,000.00. That being the case, the Debtor has had no prospects of refinancing the property and has proceeded this far through the Bank's willingness to cooperate. At this point, it appears that there is no possibility of reorganizing the company and that the company should be liquidated through a liquidating plan. As stated below, the plan will allow for a sale of the Debtor's real property either under the terms of section 363 of the Bankruptcy Code, or through a non judicial trustee's sale. The Debtor does not desire to delay a sale of the property so the Debtor will agree to a termination of the automatic stay subject to any conditions imposed by the U.S. Trustee or the Court. In doing so, the Bank will bear responsibility for any deposits due to lessees whose leases attorn to the Bank. Additionally, the Debtor will request a carve out of funds necessary to pay unsecured creditors. A liquidation of the company will provide certain tax benefits to the Tenneys although the Tenneys will not receive or retain anything under the Plan.

This bankruptcy case was filed pursuant to an oral agreement with the Bank in an attempt to work out a plan for both the Tenneys and White Mountain Lodging. Had this property simply been foreclosed, the Tenneys are informed that they would have suffered severe tax consequences that would have precluded them from reorganizing (probably both the White Mountain Lodging case and their personal case). Under any circumstances, a liquidation was certain and it was determined that the most efficacious manner of doing so was in the context of a liquidating plan.

**F. Bankruptcy Filing**

On October 3, 2013, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

### G. The funding of the Plan of Reorganization

The Plan of reorganization will consist of an orderly liquidation of the Debtor's assets. As noted, it is anticipated that deposits will be paid, if at all by the successful purchaser of the Debtor's real estate (presumably the Bank). The debtor has a small amount of receivables and a judgment which it will use to fund the remaining unsecured debt if such can be collected. Mr. Tenney shall oversee the liquidation, but shall not be compensated for doing so.

### H. Classification and Treatment of Claims

The classification and treatment of claims is set forth in the Plan terms which are set forth in their entirety below.

### I. Miscellaneous Disclosures

<u>Tax Consequences</u>. The Plan may have an impact on the tax liability of the creditors, parties in interest and the Debtor. As to the Debtor, the tax effect is passed through to the owners of the company.

<u>Stay of Enforcement Proceedings</u>. Pursuant to 11 U.S.C. § 362(a), all acts by creditors to collect claims which arose prior to the filing date have been stayed. Upon confirmation of the Plan, the claims of creditors of the Debtor will be discharged except to the extent of payment under the Plan. In addition, the Plan will provide for a continuing stay against actions against the Debtor as long as the Debtor substantially meets the terms of the Plan.

<u>Liquidation Analysis</u>. Section 1129 of the bankruptcy code requires that each dissenting class of claims or interests receive or retain as much on such claim as a creditor would receive under a Chapter 7 liquidation proceeding.

Since the Debtor will be liquidated, there is no requirement to meet Chapter 7 reconciliation requirements as the assets will be distributed in order of priority.

<u>Feasibility of Plan / Projections.</u> The feasibility of the Plan depends only upon an orderly liquidation of assets.

Objection to Claims. The Debtor reserves the right to object to any claim regardless of whether the claim: (1) is listed in the Debtor's schedules as disputed or undisputed, (2) has been filed in this case, (3) has not been filed in this case and/or (4) that has been paid without authorization of the Court.

Proponent's Recommendation. Plan proponent urges acceptance of this Plan by all holders of claims and interests. All claimants will be paid in full but only to the extent of the Plan. This Plan provides a speedy and efficient way of resolving this matter without the continued multiplication of administrative costs and expenses. Indeed, in the event that the Debtor is unable to get the voluntary cooperation of its creditors, the Debtor proposes to "accomplish through the judicial process what the parties were unable to accomplish [outside of bankruptcy] - - [provide] a fix of something that has the potential to do the greatest good for the most people." J. M. Marlar, *Getting Confirmed: Ten Tips to Help Nudge Your Debtor Across the Finish Line*, Norton Bankr. L. Advisor, vol 4 (Spring 2011).

## PLAN OF REORGANIZATION

### J. The Plan of Reorganization

The following contains the terms of the Plan of reorganization that is being submitted by the Debtor. It reflects the treatment of the allowed claims and interests under the Plan. All claims against the Debtor, as defined herein and in Section 101(5) of the Bankruptcy Code, of whatever nature, whether or not scheduled, liquidated, or unliquidated, absolute or contingent, including all claims arising from the rejection of executory contracts and all classes of interest in the Debtor, shall be bound by the provisions of the Plan. The definitions set forth above shall apply to the terms of the Plan as set forth below. For purposes of payment of claims under the Plan, claims are divided into the following classes:

### 1. Classification of Claims

The classification of claims and interest under the Plan are as follows:

**CLASS 1**

Class 1 shall consist of all claims for administrative expenses allowed pursuant to §§ 503 and 330 of the Code and claims entitled to priority in accordance with §507(a)(1), through (6). The Debtors believe that the claim of Richardson & Richardson, P.C. will be the only claim in this class. In this class there are no known §§ 507(a)(2), 507(a)(3), 507(a)(4), 507(a)(5) and 507(a)(6). The claim of Richardson & Richardson, P.C. will be on such terms as the parties may agree or upon confirmation. This class is unimpaired.

**CLASS 2**

Class 2 shall consist of the secured claims of all creditors and taxing authorities having an allowed secured claim against the Real Property or Personal Property of the Debtor. To the extent the County has a lien for taxes on any real or personal property of the Debtor, they will be paid when due under non-bankruptcy law by the then owner of the real property in question

**CLASS 3**

This class shall consist of all claims entitled to priority under 11 U.S.C. § 507(a)(8). The Debtor believes that there are no Class 3 claims.

**CLASS 4**

Class 4 shall consist of the allowed secured claims against real property or personal property of the Debtor. The allowed secured claim of Desert Schools Federal Credit Union, the holder of a first deed of trust on real property located at 615 W. Hopi Drive, Holbrook, Arizona, to the extent it is allowed as a secured claim. The Debtor believes that this is the only Class 4 claim. This class is impaired.

**CLASS 5**

Class 5 shall consist of the allowed general unsecured claims against the estate. This will include any and all lessees of the Debtor who have paid security deposits in connection with their leases of real property of the estate.

**CLASS 6**

Class 6 consists of the holders of an interest in the Debtor, Randy and Debbie Tenney..

**2. Treatment of Claims**

**Class 1**: The holders of class 1 claims (administrative claims), as allowed by the Court, shall be paid in full on the effective date or at such later date as such administrative creditors may agree. The administrative claims of this class, shall be payable upon an order approving payment in the ordinary course but in no event later than the effective date. Class 1 claims shall be paid before the commencement of payment to unsecured creditors. Applications for payment of this class may be made and allowed at any time. This class is unimpaired.

**Class 2**: The holders of class 2 claims shall be paid the allowed amount of their secured claims the earlier of the date such claims become due in the ordinary course or within 150 days after the effective date of the Plan whichever is later. Such Claimants shall retain their liens and be deemed unimpaired.

**Class 3**: The holders of class 3 claims (administrative priority tax claims) shall be paid on account of their claims, the principal amount of their allowed claims together with interest at the statutory rate in equal monthly installments over sixty (60) months. The non-priority portion of any Class 3 claim shall be treated as a Class 5 claim.

**Class 4**: Holders of class 4 claims (Desert Schools Federal Credit Union) will retain their pre petition security interests in any of their identifiable collateral to the extent of the value thereof as of the date of the petition. The holders of all Class 4 claims will be conveyed their collateral through a sale under 11 U.S.C. §363 or in the context of a non-judicial trustee's sale and shall retain their rights and liens as such exist under state law. All leases of real property owned by the Debtor shall attorn to the Bank upon sale or disposition through non-judicial foreclosure proceedings. This creditor is impaired.

**Class 5**: Class five unsecured creditors will be paid from any assets remaining from the disposition of the real property of the estate. At the Bank's discretion, the Bank

will assume any deposit obligations of the Debtor to lessors of estate property. Otherwise, unless assumed by the Bank, all leases of real property shall be deemed rejected as of the commencement of the case. Dart Holbrook, a management company owned by the Tenneys, shall be deemed to have waived its claim against the estate.

**Class 6:** Holders of class 6 interests shall not receive or retain any property under the terms of the plan unless unsecured creditors are paid in full. It is estimated that no distributions will be made to Randy or Debbie Tenney as the only interest holders of the company.

3. **Implementation of the Plan**

    a. Upon the effective date of the Plan, title to the assets of the estate shall vest in the Debtor and shall be liquidated by the management. The Debtor shall immediately take all steps necessary to implement the Plan terms in accordance with the order of the Court or in accordance with the law generally. That may include, but is not limited to, executing such documents or agreements as are necessary to effectuate the Plan.

    b. Upon the effective date of the Plan, the Debtor shall have all the right, power and authority to effectuate the Plan according to the business judgment of the management of the Debtor. The Debtor's exercise of discretion operating the Debtor shall not be disturbed or subject to challenge except for gross negligence or willful waste of the assets of the Debtor. The Debtor shall possess the unfettered right and authority to object to any claim, or compromise any claims against the Debtor whatsoever despite any treatment that may otherwise be afforded according to the terms of the Plan.

    c. The Debtor shall be entitled to notice of any defaults under the Plan. Notice shall be given via hand delivery or by certified U.S. Mail return receipt requested and a copy shall be mailed to counsel for the Debtor. The Debtor shall thereafter have ten days in which to cure any alleged default. Cure of the default within ten days shall not result in an obligation to pay any fees, late fees, costs or expenses on the part of the creditor claiming default.

4. **Miscellaneous Plan Terms**

   a. Upon the effective date of the Plan, the automatic stay of Code § 362(a) shall remain in full force and effect and all creditors shall be enjoined from continuing with or commencing any action or proceeding against the Debtor, the properties, or other Plan assets, except as specifically provided in this Plan.

   b. Except for administrative claims whose agreement with the Debtor expressly provides otherwise, no distribution shall be made hereunder or on account of, nor shall any claimant be allowed any interest, costs, expenses, or attorneys' fees, except as provided in this Plan.

   c. Upon the entry of the order of confirmation, the Plan shall bind the Debtor, any entity acquiring or being distributed any property under the Plan, any creditor, any party in interest, whether or not their claims and interests are impaired under the Plan and whether or not they have accepted the Plan.

   d. If the Debtor, a creditor or party in interest fails to comply with the terms of the Plan, the holders of claims in any class materially harmed thereby may proceed against the offending party in order to enforce the Plan and collect the obligations of the Debtor hereunder by bringing or taking any appropriate action under federal or state law, in bankruptcy court or other court of competent jurisdiction. Any party proceeding to enforce a term of this Plan shall be entitled to recovery of its reasonable attorney fees and costs.

5. **Claims Subject to Dispute; Objections to Claims**

   a. The Debtor and any creditor or party in interest may file with respect to any claim (a) an objection to such claim; (b) a motion to determine the extent, priority, or amount of any secured or unsecured claim; (c) a complaint to determine the validity, priority, extent of a lien, or other interest in the properties; or (d) a motion to subordinate an unsecured claim prior to the objection deadline. Copies of all objections, motions, or complaints must be timely served in accordance with the applicable rules.

b.  All claims shall be subject to dispute and claim objections shall be resolved in accordance with the Bankruptcy Rules. The failure to have timely filed a claim in accordance with any court order fixing a bar date for filing claims shall preclude any distributions from the estate for any such untimely claims. Creditors and/or interested parties may object to claims for a period of fifteen (15) days after the effective date (the "Deadline"). If an objection, motion or complaint is filed with respect to any such claim prior to the Deadline, that claim can only be allowed by order of the court. If, however, no objection, motion or complaint is filed with respect to such claims prior to the deadline, the claim shall be deemed to be an allowed claim. Nothing contained in this paragraph shall operate to excuse any creditor from having timely filed a claim as previously ordered by the court. Additionally, nothing contained in this paragraph shall allow an objection to a claim where the time for objecting to such claim has already expired.

**6.  Modification of the Plan**

Prior to the order of confirmation, the Debtor may propose amendments or modifications to the Plan in accordance with § 1127(a) of the Code. After confirmation, the Debtor may amend the Plan in the manner provided by § 1127(b) of the Code. However, if, after such amendments, all classes of creditors remain unimpaired pursuant to the Code, the amended Plan need not be served upon creditors and interested parties. The Court may, at any time, so long as it does not materially or adversely affect the interest of the creditors, remedy any defects or omissions or reconcile any inconsistencies in the Plan or in the order of confirmation, and in such manner as may be necessary to carry out the purposes and effect of the Plan.

**7.  Retention of Jurisdiction**

The Court shall retain jurisdiction over this estate until all claims subject to dispute have been determined and all litigation is terminated. The Court shall also retain jurisdiction to ensure that the purpose and intent of this Plan is carried out, to approve payment of administrative claims, to modify this Plan, to correct any defect, to cure any omission or reconcile any inconsistencies in this Plan or the order of confirmation, to

address the estate's right or claim to any property of the estate or of property conveyed by the estate, to enter any orders necessary to carry out the Plan, to enter an order terminating the case, to determine all disputes and controversies arising under the Plan, and for other proper purposes. The court shall also retain jurisdiction to hear and determine all claims against the Debtor, including claims allowed for voting purposes at the time of confirmation and to enforce all causes of action which may exist on behalf of the Debtor.

**DATED** this ___3rd___ day of October, 2013.

**RICHARDSON & RICHARDSON, P.C.**

By___/s/ WRR 009278___
William R. Richardson
1745 South Alma School Road
Corporate Center • Suite 100
Mesa, Arizona 85210-3010
Attorneys for Debtor

**ORIGINAL** of the foregoing electronically
filed this ___3rd___ day of October, 2013 and a
**COPY** mailed this same date to:

United States Trustee
230 N. First Avenue
Suite 204
Phoenix, AZ 85003-1706

By___/s/ajc___

F:\DOC\DOC L-Z\T\Tenney\04 - Dart Pebble Creek\Pleadings\CH 11 PLAN\POR DST.wpd